RUTHERFORD THOMPSON TEAS, executor under the last will and testament of Elizabeth M. Teas, deceased, complainant-respondent,

*v.*

THIRD NATIONAL BANK AND TRUST COMPANY, defendant-appellant.

[Submitted October 18th, 1938.   Decided February 6th, 1939.]

*Messrs. Bleakly, Stockwell & Burling* (*Mr. Henry F. Stockwell,* of counsel), for the complainant-respondent.

*Mr. Harold W. Bennett,* for the defendant-appellant.

The opinion of the court was delivered by

PORTER, J.

A decree of the court of chancery advised by Vice-Chancellor Davis is appealed from.

The prayer of the bill of complaint was to enjoin the defense of the statute of limitations set up in an answer in an action at law.

The court below granted the injunction and we think properly so.

The facts are that the complainant-respondent is the executor under the last will and testament of his deceased mother, Elizabeth M. Teas. He retained Joseph H. Carr, an attorney in Camden, to represent him. Carr had represented his father's estate and he considered him entirely trustworthy and a lawyer of high standing and fine reputation. Respondent was an engineer who resided in Chicago and whose profession required considerable traveling.

He considered it advisable to liquidate some mortgages held by the estate and instructed Carr to dispose of two certain mortgages on properties in Delaware county, Pennsylvania. Carr suggested that both mortgages be assigned so that they could readily be disposed of. He complied with that suggestion and executed assignments in Chicago, one dated December 16th, 1929, and the other one dated December 23d, 1929, and mailed them to Carr.

Carr collected the amounts due on both mortgages and converted the proceeds to his own use in the manner presently shown. He kept respondent in ignorance of his fraud and, in fact, remitted sums to him which he stated were the interest on the mortgages, and made other false statements as to why he had been, as he claimed, unable to collect the principal sums due. On May 23d, 1935, Carr sent an attorney from Camden to respondent in Chicago with the information that he had collected the moneys due on both these mortgages and had appropriated same to his own use. Respondent then came to Camden and saw Carr who repeated his confession and offered to make restitution, paying on account thereof $200 and later $1,500. Carr did not tell respondent nor did respondent have any knowledge of the method used by Carr in obtaining the mortgage money.

In the fall of 1936 respondent asked a friend who was a Philadelphia attorney to investigate the matter and as a result he then for the first time learned how the money had come into Carr's possession.

It developed that two checks were delivered to Carr in payment of the mortgages; both issued by the Real Estate-Land Title and Trust Company of Philadelphia: the first

one dated December 23d, 1929, to the order of Rutherford Thompson Teas, ancillary executor, in the sum of $5,591.08. The second check dated January 2d, 1930, to the order of estate of Elizabeth M. Teas in the sum of $5,605.10.

Both checks have printed on their faces these words: "Payable upon proper identification of payee." Both were endorsed by Carr in the name of the payee and under same: "Joseph H. Carr, Atty." and "Joseph H. Carr," and deposited by him in his own private bank account to his own order and, as later confessed by him, as aforesaid, the proceeds appropriated to his own use.

Respondent had no account in the defendant-appellant bank nor any business relations with it.

Promptly upon receiving this information respondent consulted New Jersey counsel and a notice and demand was at once served upon appellant bank, dated November 16th, 1936.

Carr at the time these checks were deposited by him was a director and counsel for the appellant bank. No question was raised as to the propriety of the transaction by anyone and no notice of any kind was given by the bank to respondent nor was any investigation or inquiry made by the bank. The checks were cleared in due course and the proceeds paid to the bank.

Promptly after the service of the notice and demand on the appellant by respondent and payment refused, suit was instituted by him against the bank to recover the proceeds of these checks in the New Jersey supreme court.

The answer filed by the bank, among other things, set up the statute of limitations as a bar to the action. The bill in chancery followed to permanently enjoin the bank from availing itself of that defense.

It is not disputed that the proceeds of these checks belonged to respondent. He at no time authorized Carr to endorse his name to them. It follows that there was conversion of the funds. The possession of the checks by the appellant bank was unlawful with these unauthorized endorsements thereon. Negotiable Instrument law, *R. S. 7:2-23.*

There is no substantial difference between an unauthorized endorsement and a forged endorsement, the result being the

same in so far as concerns the passing of title. *Passaic-Bergen Lumber Co.* v. *U. S. Trust Co., 110 N. J. Law 315.*

The bank paying on a check so endorsed, where title had not passed, did so at its peril and became liable to the payee, the respondent here, for the proceeds. This is so whether the appellant bank was aware of the unauthorized endorsement or not and in the absence of privity between them. The respondent stood in no relation with the appellant bank which was acting as a collecting bank and therefore owed no duty to the bank. He was under a duty to give notice to the bank as soon as he knew of the conversion and before an action would lie. This duty he discharged. Compare *Buckley* v. *Second National Bank of Jersey City, 35 N. J. Law 400; Dennis Metal Manufacturing Co.* v. *Fidelity Union Trust Co., 99 N. J. Law 365.*

Coming now to the defense of the statute of limitations set up in the answer to the suit at law and enjoined by the court of chancery, it would, under the facts of this case, be most inequitable to allow the bank to take advantage of its own wrongdoing by setting up this defense. The bank was derelict in its duty to the respondent in permitting the conversion of these funds by Carr. It should have made inquiry as to his right to endorse and place the proceeds of the checks in his own account to his own credit. The bank by reason of the form of the checks was put upon notice that Carr had no power to do what he did. Its failure to inquire was a breach of a duty owing to respondent and for which it is liable to him. *Passaic-Bergen Lumber Co.* v. *U. S. Trust Co., supra.*

Its action constituted equitable fraud and it is now estopped from interposing the defense of the statute and equity will properly enjoin such defense. *Howard* v. *West Jersey, &c., Railroad Co., 102 N. J. Eq. 517; affirmed, 104 N. J. Eq. 201; Partrick* v. *Groves, 115 N. J. Eq. 208; Holloway* v. *Appleget, 55 N. J. Eq. 585; Clark* v. *Augustine, 62 N. J. Eq. 689.*

The appellant argues for reversal that the respondent must make it appear clearly before he can obtain equitable relief that he was prevented, by the act of the defendant, from

bringing his suit at law until his right of action was barred by the statute. That is a correct statement of the law. *Lamb* v. *Martin, 43 N. J. Eq. 34; Russell* v. *Hanan, 119 N. J. Eq. 99.*

We conclude, however, as above pointed out, that the respondent was prevented from bringing his suit by the bank's failure to give him notice of the transaction. Its action in keeping him in ignorance was clearly a wrongful act on its part. Whether its act may be said to have been active wrongdoing or merely an act of negligence on the part of an employe, for which it is responsible, makes no difference in principle. The money which belonged to respondent was withheld from him by a wrongful act on the part of the bank and there was no negligence shown on his part after he made discovery of the manner in which it had made possible his loss. He was clearly prevented from bringing his action by the act of the bank and the facts so show.

Nor do we find any merit in the appellant's contention that the respondent was guilty of negligence, laches, acquiescence or ratification. On the contrary, we think he acted with promptness and diligence as soon as he had knowledge of the transaction. The facts that respondent accepted $1,700 as part restitution from Carr and had filed no accounting as executor have no materiality on the issues whatsoever.

The decree appealed from is affirmed, with costs.

*For affirmance*—The Chief-Justice, Trenchard, Parker, Bodine, Heher, Perskie, Porter, Dear, Wells, WolfsKeil, JJ. 10.

*For reversal*—Case, Donges, Hetfield, Rafferty, Walker, JJ. 5.