209 N.J. Super. 51 (1986)
506 A.2d 1253
GRACE MANCUSO, PLAINTIFF-APPELLANT,
v.
ANTHONY MANCUSO, WILLIAM LEIGH, AND "JOHN DOE" (A FICTITIOUS NAME), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1986.
Decided March 11, 1986.
*52 Before Judges PRESSLER, DREIER and BILDER.
Benjamin Levine argued the cause for appellant.
Edward J. Gilhooly argued the cause for respondent Anthony Mancuso (Edwards & Antholis, attorneys; Edward J. Gilhooly and Joel M. Ross, on the brief).
*53 Frank Tunnero argued the cause for respondent William Leigh (Paul Seligman, attorney; Frank Tunnero on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Grace Mancuso appeals from a summary judgment dismissing her automobile-negligence personal injury action against defendants Anthony Mancuso and William Leigh. The dismissal was based on the untimeliness of the institution of the action, the trial judge having concluded that it was barred by the two-year limitations period prescribed by N.J.S.A. 2A:14-2. The question before us is whether plaintiff was entitled to claim the benefit of the so-called discovery rule by which the date of accrual of the action is deferred until the injured person knows or is chargeable with knowledge that he has an actionable claim. Our review of the record persuades us that there were sufficient facts here to mandate the holding of the threshold hearing required by Lopez v. Swyer, 62 N.J. 267 (1973).
The record is regrettably sparse. It does, however, permit the finding of the following facts. On September 8, 1981, plaintiff was a passenger in an automobile operated by her husband Anthony Mancuso. Their vehicle was involved in a collision with an automobile operated by defendant William Leigh. Plaintiff sustained what appeared to be superficial soft tissue injuries of minimal consequence. She saw her family physician, Dr. Eugene Buchwald, immediately after the accident and again two days later, incurred a total bill of $70, was assured that the trauma was entirely transient, and apparently suffered no physical sequelae therefrom.
Some time after the accident, the record not indicating just when, plaintiff began experiencing neurological symptoms on the left side of her body. By the spring of 1982, Dr. Buchwald had diagnosed her problem as Parkinson's disease, for which he treated her. He apparently referred her to a neurologist at the New York University Medical Center for a consultation in *54 September 1982. The neurologist's report confirmed the diagnosis of "unilateral Parkinson's syndrome." Plaintiff continued under Dr. Buchwald's care but, apparently because of the rapid deterioration of her condition, she sought help from the Department of Neurology of the Lahey Clinic in Massachusetts in mid-October 1983. The examining neurologist, Dr. Stephen L. Wanger, not only again confirmed the Parkinson's diagnosis but also was of the view that the disease, incipient at best at the time of the accident, had been seriously exacerbated thereby. As he stated in the report he furnished to plaintiff's attorney in November 1983:
Mrs. Mancuso clearly has Parkinson's disease. By history, this disorder was not present prior to the trauma of two years ago. While it is not possible to prove that the trauma of that motor vehicle accident was the actual cause of her Parkinson's disease, there is no doubt in my mind that her disease was markedly and substantially aggravated by that accident, and I believe that her current degree of disability would be very much less severe had she not experienced that trauma.
This action was commenced on June 17, 1984, two years and nine months after the accident and eight months after plaintiff allegedly discovered the causal connection between the accident and her Parkinson's disease.[1] Both defendants, relying on the two-year statute of limitations, moved for summary judgment dismissing the complaint. The trial judge granted the motions on the ground that the discovery rule has not yet been applied in tort actions arising out of automobile negligence. We conclude that he erred.
Both N.J.S.A. 2A:14-1, which prescribes a six-year limitations period for property damage actions, and N.J.S.A. 2A:14-2, which prescribes a two-year limitations period for personal *55 injury actions, provide that the limitations period starts to run from the date of the accrual of the cause of action. The discovery rule, as developed by the New Jersey courts over the last several decades, is a technique by which the date of accrual of the cause of action is deferred from the customary date of the actual infliction of the injury until the date upon which the injured person knows or should, by the exercise of reasonable diligence, know that he has sustained an actionable injury. As summarized by Justice Handler in Tevis v. Tevis, 79 N.J. 422, 432 (1979), "* * * when a party is either unaware that he has sustained an injury or, although aware that an injury has occurred, he does not know that it is, or may be, attributable to the fault of another, the cause of action does not accrue until the discovery of the injury or facts suggesting the fault of another person."
The rule has been most prominently applied in medical malpractice cases. See, e.g., Fox v. Passaic General Hospital, 71 N.J. 122 (1976); Lopez v. Swyer, 62 N.J. 267 (1973); Fernandi v. Strully, 35 N.J. 434 (1961). But it has also been applied in a variety of other categories of actions in which the peculiar factual circumstances of the case have permitted a finding that the plaintiff could not have reasonably known on the date the harm was inflicted both that he had sustained an injury and that the injury was attributable to another's fault. See, e.g., O'Keeffe v. Snyder, 83 N.J. 478 (1980) (replevin of a painting); Rosenberg v. Town of North Bergen, 61 N.J. 190 (1972) (personal injury and property damage actions against persons performing or furnishing the design or construction of real property improvements, provided the action is commenced within the ten-year maximum period prescribed by N.J.S.A. 2A:14-1.1); Diamond v. N.J. Bell Telephone Co., et al., 51 N.J. 594 (1968) (action against utility for negligent installation of an underground conduit); New Market Poultry Farms, Inc. v. Fellows, et al., 51 N.J. 419 (1968) (action against land surveyor based on professional error); Rosenau v. City of New Brunswick and Gamon Meter Co., 51 N.J. 130 (1968) (action based on product *56 defect); Mant v. Gillespie, 189 N.J. Super. 368 (App.Div. 1983) (action based on legal malpractice); Federal Insurance Co. v. Hausler, 108 N.J. Super. 421 (App.Div. 1970) (action based on stockbroker's clerical error); Brown v. College of Medicine and Dentistry, 167 N.J. Super. 532, 536-537 (Law Div. 1979) (action based on breach by union of its duty to fairly represent the bargaining unit); Gibbins v. Kosuga, 121 N.J. Super. 252 (Law Div. 1972) (breach of contract action based on vendor's misrepresentation as to well location).
There are two common threads running through all these cases in which the discovery rule has been applied. First, as a matter of conceptual and technical eligibility for application, the cause of action itself is one subject to a period of limitations measured by accrual rather than by the occurrence of an objective event. Compare, e.g., Lawrence v. Bauer Publishing & Printing Ltd., 78 N.J. 371 (1979), rev'g on dissent below, 154 N.J. Super. 271, 277 (App.Div. 1977) (discovery rule inapplicable to one-year statute of limitations for libel actions prescribed by N.J.S.A. 2A:14-3); Rosenberg v. Town of North Bergen, 61 N.J. 190, 198 (1972) (discovery rule inapplicable to ten-year maximum prescribed by N.J.S.A. 2A:14-1.1 for actions based on the design and construction of real property improvements); Presslaff v. Robins, 168 N.J. Super. 543, 546-548 (App. Div. 1979) (discovery rule inapplicable to wrongful death action pursuant to N.J.S.A. 2A:31-1, 3); Evernham v. Selected Risks Insurance Company, 163 N.J. Super. 132 (App.Div. 1978), certif. den., 79 N.J. 479 (1979) (discovery rule inapplicable to action under auto recovery personal injury protection benefits under N.J.S.A. 39:6A-13.1); Interlox Punch & Die Corp. v. Insilco Corp., 174 N.J. Super. 175 (Law Div. 1980) (discovery rule not applicable to action seeking civil recovery under the New Jersey Uniform Securities Act, N.J.S.A. 49:3-71). Second, the circumstances in each of the cases before the court have strongly militated towards the grant to plaintiff of equitable relief. This is so since the discovery rule, although conceptually based upon the expansive definition accorded to the term "accrual," is nevertheless *57 an essentially equitable doctrine seeking to accommodate the conflicting desiderata of repose on the one hand and, on the other, the affording of a fair opportunity to a plaintiff to seek redress for a belatedly discovered injury. As expressed by Justice Pollock in O'Keeffe v. Snyder, supra, 83 N.J. at 491,
To avoid harsh results from the mechanical application of the statute, the courts have developed a concept known as the discovery rule. The discovery rule provides that, in an appropriate case, a cause of action will not accrue until the injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered, facts which form the basis of a cause of action. The rule is essentially a principle of equity, the purpose of which is to mitigate unjust results that otherwise might flow from strict adherence to a rule of law. [citations omitted]
Thus, as Justice Pollock further pointed out in O'Keeffe, supra at 492, "Increasing acceptance of the principle of the discovery rule has extended the doctrine to contexts unrelated to medical malpractice."
Since injuries sustained in automobile accidents are subject to the accrual principle of N.J.S.A. 2A:14-2, we see no conceptual impediment to their eligibility, in appropriate circumstances, for the benefit of the discovery rule. We are aware that ordinarily a cause of action based on automobile negligence occurs when the accident takes place and hence that a plaintiff is then chargeable with knowledge of the cause of action even if it should thereafter appear that the injuries then known to have been sustained turn out to be more serious than originally believed. See, e.g., Montag v. Bergen Bluestone Company, 145 N.J. Super. 140, 144-145 (Law Div. 1976); Raskulinecz v. Raskulinecz, 141 N.J. Super. 148, 151 (Law Div. 1976). Accordingly, a plaintiff claiming the benefit of the discovery rule in respect of an injury so sustained has an extraordinarily high burden of demonstrating that he did not and could not have timely known of the existence of the cause of action. This is particularly so where, as here, the existence of the actionable injury is known shortly after the occurrence of the accident.
*58 What makes this case extraordinary, however, is the nature of the injury, namely, Parkinson's syndrome, a disease defined as "a neurological disorder caused by postinflammatory or degenerative disease of the basal ganglia." Stedman's Medical Dictionary at 925 and 920 (3rd Lawyers Edition, 1972). As a matter of common knowledge, all manner of physical ailments are associated with the effects of trauma. Consequently, the development of symptoms following the trauma which, as a matter of either common medical or lay knowledge, could possibly have been recognized as caused by the trauma must be regarded as providing the injured person with knowledge of his cause of action based thereon. The representation made to us here, however, is that the potential causal connection between a severe exacerbation of Parkinson's disease and an apparently minor trauma sustained in an automobile accident which apparently resulted only in negligible soft tissue injury is a matter of such highly specialized medical knowledge that plaintiff cannot be reasonably chargeable with not having made that connection until she was so advised by the Lahey Clinic neurologist just a month after the running of the statute. If that representation were evidentially supported  i.e., if a finding were made that plaintiff had no reason, by way of medical advice or otherwise, to associate her neurological condition with the trauma and if she could show that even with the exercise of reasonable diligence that causal connection would have remained unknown to her until that time  then a trial judge could be persuaded that this is indeed an extraordinary case eligible for the application of the discovery rule.[2]
We make one final observation. All parties have urged the relevancy of the line of cases dealing with the issue of whether accrual of a cause of action for personal injuries sustained in an *59 automobile accident is deferred until the $200 threshold of N.J.S.A. 39:6A-8 is reached. See Manturi v. V.J.V., Inc., 179 N.J. Super. 300 (App.Div. 1981); Cappadona v. Eckelmann, 159 N.J. Super. 352 (App.Div. 1978); Montag v. Bergen Bluestone Company, 145 N.J. Super. 140 (Law Div. 1976). We regard that line of cases as inapposite here. In all of them, plaintiff had a known injury caused by the accident, the only question being if and when treatment expenses would exceed the threshold. Here we have an injury whose potential causal relationship to the accident is a matter, so it is alleged, beyond ordinary lay and even ordinary medical knowledge. Plaintiff's determination not to commence an action to recover damages for her negligible and transient soft tissue injuries was not only consistent with N.J.S.A. 39:6A-8 but was, she contends, primarily based upon her perception that the only injuries which she knew or had cause to suspect she had suffered in the accident were too minimal to warrant litigation. Thus, the point here is not when her injuries became eligible for suit by reason of the aggregation of treatment expense but rather when she knew or should have known that the only injury she sustained which warranted the expense and burden of litigation had any relation at all to the trauma.
We do not intend to suggest by our holding in this case that relief should be available to a plaintiff who merely misjudges the severity of a known injury or who suffers consequent symptoms or ailments reasonably related to the originally known causally-connected injury. We simply recognize that because Parkinson's disease is not normally considered to have any causal nexus to trauma, the totality of the circumstances here invoke the equitable predicates of the discovery rule in order that recovery for that specific and separate injury may be pursued.
We reverse and remand for a preliminary evidential hearing as prescribed by Lopez v. Swyer, 62 N.J. 267 (1973).
NOTES
[1] Plaintiff failed, apparently inadvertently, to file an affidavit in opposition to the motion, but there was nevertheless no doubt that her position was based on her contention that, until the Lahey Clinic examination by Dr. Wanger, she had no reason to suspect that her Parkinson's disease and the September 1981 automobile accident had any connection. Indeed, it appears that the trial judge accepted that contention and was concerned only with the availability of the discovery rule in that factual pattern.
[2] If it should be determined in the Lopez hearing that the cause of action did not accrue until October 1983, then clearly the complaint was timely filed. See Fox v. Passaic General Hospital, 71 N.J. 122 (1976).